IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

MISSOURI & NORTHERN ARKANSAS
RAILROAD COMPANY, INC.                                                    PLAINTIFF

v.                                      No. 1:10-cv-8-DPM

ENTERGY ARKANSAS, INC.                                                    DEFENDANT

ORDER

1. **Summary.** The case is down to MNA's requests for costs, prejudgment interest, and attorney's fees. Considering all the material circumstances, and the governing law, the Court makes these awards:

| | |
|---|---|
| Costs | $ 6,814.74 |
| Prejudgment Interest | $ 118,331.25 |
| Attorney's Fees | $ 148,008.88 |
| Total | $273,154.87 |

This is less than the Railroad seeks but more than Entergy suggests. Here is the Court's reasoning.

2. **Costs.** MNA prevailed. Under Rule of Civil Procedure 54(d)(1), as Entergy recognizes, the Railroad is entitled to recover certain costs incurred as specified by 28 U.S.C. § 1920.

The $350.00 federal filing fee is agreed and allowed. 28 U.S.C. § 1920(1). Though more details would have been helpful, the Court allows $278.25 in witness fees for our trial. 28 U.S.C. § 1920(3). All service fees are disallowed because the Railroad has not shown payment to the U.S. Marshal. The statute allows reimbursement only for service by the Marshal. 28 U.S.C. § 1920(1); *Crues v. KFC Corp.*, 768 F.2d 230, 234 (8th Cir. 1985).

The Court allows $ 4,621.65 for deposition-related expenses. 28 U.S.C. § 1920(2). Herrin-related expenses are disallowed. He did not testify at the trial and the Court has no memory of his deposition transcript being used. While not dispositive, that is an important circumstance. Entergy advised the Railroad about his lack of knowledge before the deposition. *Compare Koppinger v. Cullen-Schiltz & Associates*, 513 F.2d 901, 911 (8th Cir. 1975). This potential witness could have been handled informally without the expense of a full-blown deposition. MNA has not established that the deposition was reasonably necessary. The Richardson-related expenses are allowed over Entergy's objection—he was a key witness, and MNA needed and used these transcripts, even though Entergy took the two depositions. All Hesse-related deposition expenses are allowed, and Entergy's objections overruled, for similar reasons.

The Court agrees, mostly, with Entergy on copies and exemplification. $1,564.84 is allowed for copies, 28 U.S.C. § 1920(4), which includes exhibit boards but excludes copying expenses from the nonsuited case that yielded no benefit in the federal case. (The Court applauds the Railroad's lawyers for charging $.10 a copy, instead of the inflated amounts sometimes charged and sought these days.) The video-service fees are disallowed. As Entergy points out, more than $1,000.00 of this request was related to the pretermitted state trial. The approximately $5,000.00 in services related to our trial, though convenient for counsel and sometimes helpful to the jury, was not essential. This slip-and-fall case was not the kind of dispute where third-party technology services were necessary to help the jury understand the proof or the issues. Though our Court of Appeals has not spoken directly on this point, the weight of authority is against allowing this kind of expense as a matter of course. *Wheeler v. Carlton*, 2007 WL 1020481, at *10-11 (E.D. Ark.) (collecting cases). This Court has allowed it in an extraordinary circumstance involving television news reports. *Duren v. E.I. Dupont De Nemours and Co.*, 4:09-cv-713, No. 147 (16 August 2012). No such circumstance exists here.

**3. Prejudgment Interest.** It is common ground that MNA is entitled to some award as a matter of substantive Arkansas law. The Railroad prevailed on its contractual indemnity claim, and it should be made whole for the settlement with Leal, and his medical bills, all of which was paid some time ago. "Prejudgment interest is compensation for recoverable damages wrongfully withheld from the time of the loss until judgment." *Reynolds Health Care Services, Inc. v. HMNH, Inc.*, 364 Ark. 168, 180, 217 S.W.3d 797, 807 (2005). There are two points of contention: first, whether the amount of prejudgment interest should be docked because it took so long to adjudicate this case, and in particular because MNA nonsuited instead of going to trial in the prior state court proceeding; and second, the proper rate of interest.

The Court rejects Entergy's argument for an across-the-board reduction based on foot dragging. This case has taken a long time to resolve. The Railroad's nonsuit was one reason why. As MNA notes, however, that strategic choice worked out well for the Railroad. More importantly, the nature of prejudgment interest cuts hard against any delay-based reduction. The Arkansas cases make plain that it's an either/or proposition. "Where prejudgment interest may be collected at all, the injured party is always

entitled to it as a matter of law." *Reynolds Health Care*, 364 Ark. at 180, 217 S.W.3d at 807. While Entergy concedes this law, its request for an equitable reduction in the circumstances presented—lengthy proceedings and a restart after the nonsuit—would erode the essence of this remedy. The course of this litigation presented risks to both sides. MNA is entitled to recover for being out of pocket since 2005 when it paid Leal.

The proper rate is a vexed question with no clear answer. We face a contract with no agreed rate. Entergy is correct: the constitutional source of the 6% rate disappeared in January 2011, when Amendment 89 to the Arkansas Constitution became effective. ARK. CONST. amend. 89, §§ 13 & 14. This Court entered its Judgment twenty-two months later, in November 2012. MNA urges the Court to use the 6% rate, relying on the long line of Arkansas cases doing so. *E.g., Wooten v. McClendon*, 272 Ark. 61, 63, 612 S.W.2d 105, 106 (1981); *Shepherd v. State Auto Property and Casualty Insurance Co.*, 312 Ark. 502, 516, 850 S.W.2d 324, 331 (1993). The few post-repeal decisions, however, have not wrestled with the legal effect of the repeal. *E.g., Razorback Concrete Co. v. Dement Construction Co., LLC*, 2012 WL 1983346, at *2 (E.D. Ark.); *Terra Renewal, LLC v. McCarthy*, 2012 WL 2805035, at *4 (E.D. Ark.). Entergy

suggests applying the federal post-judgment rate. № 135 at 4-5. Which rate applies makes about an $80,000.00 difference. *Compare* № 129 at 3, *with* № 135 at 2 and Exhibit B.

There has been one development since the parties briefed this issue: Act 1223 of 2013. Now by statute, instead of constitutional provision, "[t]he rate of interest under a contract in which a rate of interest is not specified is six percent (6%) per annum." ARK. CODE ANN. § 4-57-101(d). The new Act is silent about its retroactive effect. It was passed in April 2013; lacking an emergency clause, it became effective in August 2013. *Littles v. Flemings*, 333 Ark. 476, 484, 970 S.W.2d 259, 264 (1998). The rule is that statutes apply only prospectively, with some exceptions. *Ibid*; *see generally* Brandon J. Harrison and Hans J. Hacker, *Arkansas's Retroactive-Legislation Doctrine*, 64 ARK. L. REV. 903 (2011). The new statute therefore provides no definitive answer about Entergy's contractual interest obligation to MNA.

For three reasons, the Court will use the 6% rate. First, courts have been using this rate for more than a century. *E.g., St. Louis, Iron Mountain, and Southern Railway Co. v. Biggs*, 50 Ark. 169, 176, 6 S.W. 724, 727 (1888). Parties contract against the background of existing law. When MNA's and Entergy's

predecessors in interest made this contract in 1980, they would have known that their silence about the interest rate for unpaid indemnity obligations brought the 6% figure into their contract. *Petty v. Missouri & Arkansas Railway Co.*, 205 Ark. 990, 996, 167 S.W.2d 895, 898 (1943). Second, the new statute is a telling development. The Court declines to enter the thicket of whether Act 1223 of 2013 was remedial, and thus applies retroactively as a matter of law. *E.g., Clevenger v. City of Jonesboro*, 2011 Ark. App. 579, at 3-4, 2011 WL 4585587, at *1-2. At a minimum, the General Assembly's restoration of the 6% rate reflects Arkansas's public policy on this question. *Medical Liability Mutual Insurance Co. v. Alan Curtis Enterprises, Inc.*, 373 Ark. 525, 529, 285 S.W.3d 233, 237 (2008). Third, any other rate would be nothing but an equitable choice. This Court must make *Erie*-educated predictions about unsettled state law, and the 6% rate is one. No principled basis exists for adopting a different rate. Contracts are about settling expectations and providing certainties. The rate of prejudgment interest for an unfulfilled promise needs certainty too. This January 2011 to August 2013 gap in Arkansas law is best filled by using the traditional 6% rate.

**4. Attorney's Fees.** Arkansas law governs. ARK. CODE ANN. § 16-22-308; *All-Ways Logistics, Inc. v. USA Truck, Inc.*, 583 F.3d 511, 520-21 (8th Cir. 2009). The path-marking precedent is *Chrisco v. Sun Industries, Inc.*, 304 Ark. 227, 229-30, 800 S.W.2d 717, 718-19 (1990). The statute says the Court "may" award a "reasonable" attorney's fee to the prevailing party in a contract case like this one. ARK. CODE ANN. § 16-22-308. On all this, the parties agree.

MNA requests $296,017.75 — the total amount the Railroad paid all counsel in the indemnity litigation, state and federal, less fees related to the unsuccessful claims for implied indemnity and contribution. Entergy responds that, though some fee is reasonable in the circumstances, the amount should be in the neighborhood of $88,000.00. Applying *Chrisco*, and considering all material circumstances, the Court has no difficulty concluding that a fee is appropriate. The real question is the amount. To inform its discretion, the Court has studied the parties' submissions, reviewed the docket, and reflected on all counsels' work on paper and in the courtroom.

Some of the *Chrisco* considerations either don't apply or are at the margin. No contingency fee was involved. *Compare All-Ways*, 583 F.3d at 521.

All hourly rates charged are—Entergy acknowledges and the Court agrees—customary and fair. No argument is made that MNA's counsel had to pass on other work to handle this case. *Compare Chrisco*, 304 Ark. at 229, 800 S.W.2d at 719. Neither this dispute nor the Railroad imposed extraordinary time limitations on counsel that should be reflected in an extraordinary fee. *Ibid*. The Railroad recovered $268,233.29. This is a substantial sum, though not a wow number, like the multi-million dollar recovery in *All-Ways*. 583 F.3d at 513.

Several circumstances support a healthy fee. The experience and ability of MNA's lead co-counsel is unquestioned by Entergy. Rightly so. The case was, for example, exceptionally well tried. Perhaps this is because the expertise and professionalism of Mr. Brown and Mr. Stroud on behalf of the Railroad were equaled by Mr. Schlumberger and Mr. Falasco for Entergy. Lead counsels' good lawyering supports a substantial fee. *Chrisco*, 304 Ark. at 229, 800 S.W.2d at 718. The result does too—counsel got a complete recovery on the contract for MNA. The Court would be remiss, however, if it did not give a bit of weight here to the jury's verdict. The Railroad's full

recovery came on JNOV, in the old phrase, while the jury divided responsibility 50/50. MNA paid all the bills without dispute, which also weighs for their reasonableness.

Other *Chrisco* considerations weigh against awarding the Railroad almost $300,000.00 in fees.

First, this was a "relatively simple" case. *Chrisco*, 304 Ark. at 230, 800 S.W.2d at 719. Leal slipped and fell in the mud while trying to close a stuck gate. The parties' indemnity contract was stipulated. Yes, there was uncertainty and contention about Entergy's property line, exactly what happened that night, and exactly where. But there was nothing factually complex about this case. The legal issues were mostly straightforward too, albeit with a tangled point here and there. It took awhile for everyone, including the Court, to get their hands around the indemnity-agreement cases, the potential FELA complication, and the duty issues. But all of this was, at most, moderate lifting.

Second, the nonsuit. It is not reasonable for Entergy to have to pay for more work than was necessary— needed in an objective sense— to handle the

case well. *Chrisco*, 304 Ark. at 229, 800 S.W.2d at 718. That would be the result if the Court did not discount for the nonsuit. Voluntarily dismissing and refiling the case was part of the recipe for the Railroad's full recovery. No one can know what would have happened in state court. We do know that, after motion practice, this case looked exactly the same on the first day of the federal trial as it did on the first day of the state trial right before the nonsuit. The federal case was essentially a re-run.

The parties recycled discovery, which was appropriate and commendable. But the other work during the state proceedings did not translate into the efficiencies in the federal case one would expect. Consider the summary-judgment briefing. While different procedural law applied, the substantive law about the indemnity contract and the facts remained the same. Yet the billing shows a from-the-ground-up effort the second time around. *№ 129-1 at 23-24*. The jury instructions are another example. *№ 129-1 at 27-28*. Having been done once, they needed supplementation, not recreation.

Third, the billing reflects much wheel spinning on discovery. *№ 129-1 at 10-19.* The Court takes the Railroad at its word—in hindsight, Entergy could and should have been more responsive, more promptly. Even so, this case was factually simple. The Court agrees with Entergy's diagnosis: inefficiency by inexperienced younger lawyers for the Railroad. We've all be there when we started practicing. The largely unsuccessful discovery-related motion practice in the state proceeding supports a reduction too. It is not reasonable for a losing party to pay for battles it didn't lose. Evaluating the discovery-based part of the bills in terms of the lawyers' experience, factual complexity, and results, the Railroad's request needs reduction. *Chrisco*, 304 Ark. at 229-30, 800 S.W.2d at 718-19.

Fourth, too much time was spent on some projects. For example, a memo about the clear and settled Arkansas law on attorney's fees should not have taken eight hours. *№ 129-1 at 30.* See the statute, the *Chrisco* factors, and the *All-Ways* case on the standard of review. The Railroad covered this ground well in two paragraphs in its brief. *№ 129 at 3 & 4-5.*

Fifth, the fees incurred reflect missed opportunities for collaboration and compromise, with some tendency toward confrontation. The approximately

$4,000.00 incurred on the Herrin deposition is one example. All the back and forth about deposition designations before trial is another. The mostly unsuccessful motion practice about the parties' dueling experts also comes to mind. The Court knows it takes two to have a disagreement. Mindful that the Court was not there, and that second-guessing is easy, the Court concludes nonetheless that a discount is appropriate for some needless contention. This is another aspect of how much time was appropriate over all. *Chrisco*, 304 Ark. at 229, 800 S.W.2d at 718.

In sum, a substantial attorney's fee is reasonable but the amount sought is just too much considering all the material circumstances. The Court reduces the amount requested by 50% and awards MNA a reasonable attorney's fee of $148,008.88.

\* \* \*

Motion for prejudgment interest and fees, № *128*, granted in part and denied in part. Bill of costs, № *127*, allowed in part and rejected in part. The Court apologizes to the parties for its delay in deciding these issues. The Court will enter an Amended Judgment covering all these awards.

So Ordered.

*/s/ D.P. Marshall Jr.*
D.P. Marshall Jr.
United States District Judge

27 September 2013